# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOSE LEONARDO VALENCIA CAMPOS, | |
| Petitioner, | Case No. 26-CV-982-JPS |
| v. | |
| RAYMOND HERNANDEZ, MARKWAYNE MULLIN, TODD BLANCHE, DAVID VENTURELLA, and DALE J. SCHMIDT, | **ORDER** |
| Respondents. | |

## 1. INTRODUCTION

Jose Leonardo Valencia Campos ("Petitioner"), a Venezuelan national, arrived in the United States in November 2023. ECF No. 1 at 5.

On March 19, 2026, the United States Department of Homeland Security ("DHS") arrested Petitioner while he was in custody at the Washington County Jail. *Id.* at 2. Since then, Petitioner has been detained without a bond hearing at Dodge County Detention Facility in Juneau, Wisconsin, where Respondent Dale J. Schmidt ("Schmidt") serves as his physical custodian. *Id.* at 5. Petitioner also names as respondents Raymond Hernandez, Immigration and Custom Enforcement ("ICE") Acting Field Office Director for the Chicago Field Office; Markwayne Mullin, Secretary

of DHS[1]; Todd Blanche, Acting United States Attorney General[2]; and David Venturella, Acting Director of ICE[3] (together "Federal Respondents"). *Id.* at 5.

On June 1, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Id.* at 3. Federal Respondents purport to detain Petitioner under 8 U.S.C. § 1225(b)(2), which mandates detention. *See* ECF No. 8 at 2. Petitioner contends that 8 U.S.C. § 1226 applies to him instead, entitling him to a bond hearing. *See generally* ECF No. 9. Petitioner argues that his detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1101 et seq. ("INA") and his right to due process. *Id.*

The Court previously screened the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases.[4] ECF No. 4. Federal Respondents filed their brief in opposition to the petition, ECF No. 8 (which serves as the response for Schmidt also, *see id.* at 1 n.1 and ECF No. 4 at 4–5 n.2), and Petitioner submitted a reply, ECF No. 9. For the reasons stated below, Petitioner is not entitled to the relief he seeks. The Court will therefore deny the petition's statutory claims with prejudice. The Court will deny the petition's due process claim without prejudice to the extent that Petitioner

---

[1]The Court will direct the Clerk of Court to substitute Markwayne Mullin for Kristi Noem pursuant to Federal Rule of Civil Procedure 25(d).

[2]The Court substituted Todd Blanche for Pamela Bondi, whom Petitioner named in his petition pursuant to Federal Rule of Civil Procedure 25(d). ECF No. 4 at 1 n.1.

[3]The Court substituted David Venturella for Todd M. Lyons, whom Petitioner named in his petition pursuant to Federal Rule of Civil Procedure 25(d). ECF No. 4 at 1 n.1.

[4]The Rules also apply to § 2241 petitions. Rule 1(b) of the Rules Governing § 2554 Cases in the United States District Courts; E.D. WIS. CIV. L.R. 9(a)(2).

may have a due process claim materialize in the future related to his current detention.

## 2.      FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following recitation of facts from the petition and exhibits attached thereto.[5] ECF Nos. 1, 1-3, 1-4. The Court provides additional legal context where necessary.

Petitioner, a citizen of Venezuela, arrived in the United States on or about November 24, 2023. ECF No. 1 at 4. On November 26, 2023, DHS issued Petitioner a Notice to Appear that charges Petitioner with being present in the United States without being admitted or paroled and sets a hearing before an immigration judge in Chicago, Illinois on December 3, 2026. ECF No. 1-3. Petitioner applied for asylum on November 13, 2024. ECF No. 1-4.

In March 2026, Petitioner was living in West Bend, Wisconsin, delivering packages for Amazon. *Id.* at 5–6. Local law enforcement stopped him on March 17, 2026 for allegedly speeding and ultimately arrested him for allegedly fleeing or eluding those police officers. *Id.* at 6. While Petitioner was detained at Washington County Jail due to this arrest, DHS issued an arrest warrant for him. *Id.* DHS arrested Petitioner on March 19, 2026. *Id.* Petitioner was then placed in removal proceedings and charged with, inter alia, having entered the United States without inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* Petitioner is currently being held at Dodge County Jail without a bond hearing. *Id.* at 2, 6.

---

[5]For brevity, citations to facts within this section are omitted in later analysis.

Returning to the habeas petition, Petitioner asserts that his detention violates the INA and the Due Process Clause. *See id.* at 8–21. Petitioner contends § 1225 cannot apply to his detention; instead, § 1226(a) governs his detention, which requires an individualized bond hearing. *Id.* at 10–19. In the alternative, Petitioner asserts that, even if § 1225(b) applies to him, his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. *Id.* at 19–21.

For relief, Petitioner asks this Court for "immediate release" from immigration detention, or a "prompt bond hearing under Section 1226(a)." *Id.* at 3, 23.[6]

### 3. ANALYSIS

As a threshold matter, the Court has jurisdiction to address this petition. A federal court may grant habeas relief to a detainee who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Generally, Congress has limited district court review of immigration decisions. *See Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006)); *see also* 8 U.S.C. § 1252(a)(5). However, a district court may entertain a § 2241 petition that challenges a petitioner's allegedly unlawful detention. *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 U.S. Dist. LEXIS 213983, at *7–11 (E.D. Wis. Oct. 30, 2025) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018)). Here,

---

[6]Petitioner also moved for a preliminary order restraining Respondents from transferring Petitioner to any facility outside the Eastern District of Wisconsin. ECF No. 1 at 23. Federal Respondents agreed not to remove Petitioner from the United States or to move Petitioner outside of the Eastern District of Wisconsin while this matter remains pending. ECF No. 6.

Petitioner challenges the legal basis for his detention; accordingly, this Court has jurisdiction to consider the merits of his petition.

This case requires the Court to consider legal issues that have been hotly debated across the country—provoking a circuit split and interpretive differences within this District.[7] After careful review of the arguments and the law, the Court decides for Respondents.

### 3.1 Statutory Background

The Court begins with the statutes at issue, Sections 1225 and 1226, which govern the detention of foreign nationals[8] during removal proceedings.

Applicable to both statutes, "[a]pplicant for admission" means "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). The INA defines "admission" and "admitted" "with respect to an alien, [as] the lawful entry of the alien into the United States after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A).

---

[7]*Compare Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (concluding "applicant for admission" and "seeking admission" are equivalent) *with Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (concluding § 1226(a) applies to foreign nationals already within the U.S. interior). *Compare Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 U.S. Dist. LEXIS 213983 (E.D. Wis. Oct. 30, 2025) (finding § 1225(b)(2)'s mandatory detention applied to petitioner) *and Ugarte-Arenas v. Olson*, No. 25-cv-1721-WCG, 2025 U.S. Dist. LEXIS 252600 (E.D. Wis. Dec. 8, 2025) (same) *with De La Cruz v. Schmidt*, No. 25-cv-1562-LA (E.D. Wis. Nov. 19, 2025) (finding § 1226(a)'s discretionary release applied to petitioner), *Hernandez Herrerra v. Olson*, No. 25-cv-1994-NJ (E.D. Wis. Jan. 28, 2026) (same) *and Vela v. Schmidt*, No. 25-CV-2004-BBC, 2026 U.S. Dist. LEXIS 10716 (E.D. Wis. Jan. 21, 2026) (same).

[8]The INA defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The Court uses the term "foreign national" as synonymous with the INA's term "alien."

Section 1225(b)(1), titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," provides for expedited removal and mandatory detention for certain foreign nationals.

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i). Section 1225(b)(2), titled "Inspection of other aliens," does not pertain to expedited removal but, similar to subsection (b)(1), mandates detention for certain foreign nationals. "[I]n the case of an alien *who is an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." *Id.* § 1225(b)(2)(A) (emphasis added). Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission" not covered by subsection (b)(1). *Jennings*, 583 U.S. at 287.

By contrast, Section 1226 provides for discretionary release. Under § 1226(a), during pending removal proceedings, the Attorney General may release a foreign national on bond with conditions. 8 U.S.C. §§ 1226(a)(1)–(2). At any time, the Attorney General may revoke a bond or parole and detain the foreign national. *Id.* § 1226(b). Section 1226 also provides that the Attorney General "shall" detain a foreign national who is inadmissible or deportable for committing certain crimes, *id.* § 1226(c), and the Laken Riley Act amended this subsection of the statute to mandate detention for an

additional subset of foreign nationals, specifically, those arrested for "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." *Id.* § 1226(c)(1)(E)(ii); *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *18.

### 3.2     Section 1225 Governs Petitioner's Detention

Petitioner is properly detained under § 1225(b)(2)(A). Considering the text of Sections 1225 and 1226 and the INA as a whole, the Court finds no statutory basis to exclude Petitioner from the category of "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A).

Under the plain meaning of the text, Petitioner meets the definition of "applicant for admission." Section 1225 provides that "applicant for admission" means "an alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner did not enter the United States after inspection and authorization by an immigration officer. Petitioner is present in the United States and has not been admitted; therefore, he is an applicant for admission.

Petitioner argues that Section 1225 mandates detention only for a category of foreign nationals actively "seeking admission" into the United States, while Section 1226 governs those already in the country. ECF No. 1 at 11–12 (citing *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025); *Beltran Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025); *Jennings v. Rodriguez*, 583 U.S. 281, 287, 303 (2018); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490 (S.D.N.Y. 2025); and *Martinez v. Hyde*, 792 F. Supp. 3d 211, 222 (D. Mass. 2025)). Petitioner asserts

that he is not currently "seeking admission" within the meaning of § 1225. *Id.* at 18. Petitioner also argues that the Seventh Circuit has endorsed Petitioner's interpretation, and Respondents' interpretation would render the Laken Riley Act superfluous. *Id.* at 12–13, 16–17.

The Court disagrees with each of these arguments. First, "[a]n alien seeking admission" is equivalent to "an alien who is an applicant for admission." These terms are synonyms. The INA defines "applicant for admission," "admitted," and "admission," but does not define "seeking admission." *Avila v. Bondi*, 170 F.4th 1128, 1133 (8th Cir. 2026). "Thus, taking [Sections] 1225(a)(1) and (b)(2)(A) together, the central inquiry is whether an alien who is an 'applicant for admission' is also 'seeking admission' under [Section] 1225(b)(2)(A)." *Id.* In ordinary usage, the terms mean the same thing—someone who is an applicant for admission seeks admission. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026). The surplusage canon does not prevent Congress from using synonyms. *Avila*, 170 F.4th at 1135 (citing *Tyler v. Cain*, 533 U.S. 656, 664 (2001) and *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). And "there is 'no canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing.'" *Buenrostro-Mendez*, 166 F.4th at 503 (quoting *Jennings*, 583 U.S. at 303). Here, "the natural reading is also the most convincing." *Castañon-Nava v. DHS*, 175 F.4th 828, 874 (7th Cir. 2026) (Kirsch, J., dissenting).

In *Buenrostro-Mendez,* the Fifth Circuit employed this analogy:

Just as an applicant to a college seeks admission, an applicant for admission to the United States is "seeking admission" to the same, regardless [of] whether the person actively engages in further affirmative acts to gain admission. The everyday meaning of the statute's terms confirms that being an

"applicant for admission" is not a condition independent from "seeking admission."

166 F.4th at 502. The Second Circuit critiqued this analogy to everyday parlance, because "applicant for admission" is a statutory term of art. *Da Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026) ("Where a statute deems a term to have a particularized meaning, an analogy to its use in everyday conversation is of limited help."). The Second Circuit instead offered this:

> If someone sneaks into Yankee Stadium at the start of the game with no ticket for admission (and no intention of ever paying) and he is later found by security in a seat in the seventh inning, no one would consider that fan to be "seeking admission" to the game.

*Id.* at 76. Fair enough. But what if, as is the case here, the "gatecrasher" seeks to remain through the ninth?

The Court finds both analogies helpful for interpreting the plain meaning of the words used by Congress. "Applicant for admission" is a statutory term of art, and it also has an ordinary meaning. "[W]e typically expect the meaning of a definition to be 'closely related to the ordinary meaning of the word being defined.'" *Castañon-Nava*, 175 F.4th at 873 (Kirsch, J., dissenting) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 228 (2012) and citing *Delligatti v. United States*, 604 U.S. 423, 435 (2025)).

> We need not abandon all reference to the ordinary meaning of applicant for admission, and so what we have here is a term of art that is synonymous with an undefined term—alien seeking admission. The law says that an alien present in the United States who has not been admitted or who arrives in the United States is an applicant for admission, 8 U.S.C. § 1225(a)(1), and applicants for admission are seeking admission.

*Id.* (Kirsch, J., dissenting) (citing *Buenrostro-Mendez*, 166 F.4th at 503; *Avila*, 170 F.4th at 1134).

The Court's interpretation does not conflict with binding precedent, as to date there is none on this question. While the Seventh Circuit has analyzed the interpretation of Section 1225, as Respondents note, it did not reach binding consensus on this question. ECF No. 8 at 9–10 (citing *Castañon-Nava*, 175 F.4th at *11, 22, 35).[9]

This interpretation does not render the Laken Riley Act superfluous. "[T]he Laken Riley Act 'was aimed at making sure that certain aliens, whom Congress deemed dangerous, were necessarily detained pending their removal, whether they were lawfully admitted or not, lest they commit further crimes while released.'" *Ugarte-Arenas v. Olson*, No. 25-cv-1721, 2025 U.S. Dist. LEXIS 252600, at *11 (E.D. Wis. Dec. 8, 2025) (quoting *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *24–25). "Nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *24. Section 1226(c) "applies more broadly than § 1225(b)(2)(A), carries with it distinct parole consequences, and in short 'applies a different set of penalties to a broader group of aliens' than § 1225(b)(2)(A)." *Castañon-Nava*, 175 F.4th at 876–77 (Kirsch, J., dissenting) (quoting *Avila*, 170 F.4th at 1137). To the extent this interpretation creates overlap "with § 1225, '[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the

---

[9]Other courts have also acknowledged that the Seventh Circuit has not yet issued binding precedent on this question. *See, e.g.*, *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Hernandez Herrera, v. Olson*, No. 25-CV-1994, 2026 WL 1602258, at *1 (E.D. Wis. June 4, 2026); *Flores v. Edwards*, No. 26-CV-96-WMC, 2026 WL 1480378, at *2, n.4 (W.D. Wis. May 27, 2026).

statute contrary to its text.'" *Avila*, 170 F.4th at 1137 (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

For the foregoing reasons, the Court finds that "an alien seeking admission" is equivalent to "an alien who is an applicant for admission," and Petitioner is an applicant for admission. Accordingly, § 1225(b)(2)(A) governs Petitioner's detention.

### 3.3    Petitioner's Detention Does Not Offend Due Process

Petitioner contends that being detained without a bond hearing violates his right to due process. ECF No. 1 at 19–21. Respondents contend that removal proceedings provide Petitioner with the process he is due and that detention during removal proceedings has generally withstood due process challenges in the Supreme Court. ECF No. 8 at 11–13.

Under *Mathews*, the Court must evaluate three factors to determine whether the government has taken an individual's life, liberty, or property without due process. "The Court must consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at \*33–34 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Applying this standard to detention during removal proceedings in *Parra v. Perryman*, the Seventh Circuit defined the private interest not as "liberty in the abstract, but liberty in the United States by someone no

longer entitled to remain in this country." 172 F.3d 954, 958 (7th Cir. 1999). Here, the risk that current procedures will cause an erroneous deprivation of Petitioner's interest is minimal because, as explained *supra* Section 3.2, Petitioner's detention is mandatory. Lastly, the government has a "powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Parra,* 172 F.3d at 958.

Petitioner maintains a "recognizable liberty interest in connection with his pre-removal detention." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *39. "But . . . that liberty interest is limited." *Id.* Petitioner is a foreign national who was arrested while in the United States without authorization; he is therefore subject to removal proceedings. Because, "consistent with federal law, [Petitioner] is being provided with the opportunity to oppose removal and . . . pursue an asylum claim[,]" his detention does not offend due process. *Id.* at *39–40 (internal citation omitted).

## 4. CONCLUSION

For the reasons stated herein, Petitioner's petition for a writ of habeas corpus will be denied and this case will be dismissed. Petitioner's statutory claims will be denied with prejudice. His due process claim will be denied without prejudice because he could plausibly challenge the duration of his detention in the future.

Rule 11 of the Rules Governing Section 2254 Cases—which this Court may apply to § 2241 cases, *see* Rule 1(b), Rules Governing Section 2254 Cases—requires the Court to either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Such a certificate should only be issued where the petitioner has made a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Here, reasonable jurists could debate whether the petition should have been resolved in a different manner. Accordingly, the Court grants Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the Clerk of Court substitute Markwayne Mullin for Kristi Noem on the docket;

**IT IS FURTHER ORDERED** that Petitioner Jose Leonardo Valencia Campos's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be and the same is hereby **DENIED** as specified; Count One be and the same is hereby **DENIED with prejudice**; Count Two be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Jose Leonardo Valencia Campos's petition be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge